UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARTINE VIRGILE, *et al.*,

                           Plaintiffs,

          -against-                                **MEMORANDUM AND ORDER**
                                                       23 CV 9482 (OEM) (CLP)

THE CITY OF NEW YORK, *et al.*,

                           Defendants.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On December 28, 2023, plaintiffs Martine Virgile, Emmanuel Virgile, Fabienne

Toussaint, and S.L., a minor, by his mother and natural guardian, Martine Virgile (collectively,

"plaintiffs"), commenced this action against the City of New York ("City") and certain John Doe

Police Officers.  (ECF No. 1).  Plaintiffs allege that defendants unlawfully entered and searched

plaintiffs' home on September 30, 2022, violating plaintiffs' rights under the Fourth

Amendment, Section 1983, and the New York State Constitution; plaintiffs also allege related

state law claims in tort.  (Id.)  On March 22, 2024, plaintiffs filed their First Amended

Complaint, adding the United States and John Doe U.S. Marshals as defendants, and asserting

claims pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), and Bivens v. Six

Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) ("Bivens").  (ECF No. 5).

Currently pending before this Court is plaintiffs' motion to file a Second Amended

Complaint, seeking to (1) remove the Bivens claim and the John Doe U.S. Marshals; (2) remove

the Section 1983 claims and the John Doe Police Officers, based on the status of the City law

enforcement officers as deputized United States Marshals; and (3) add certain facts and

allegations that the City's law enforcement officers were acting within both the scope of their

federal and City employment.[1]  (See ECF No. 25-2).  The City opposes the motion only to the

extent that the proposed Second Amended Complaint alleges that the City's law enforcement

officers were acting within the scope of their City employment while working as deputized

United States Marshals.  (ECF No. 27).

For the reasons set forth below, the Court grants plaintiffs' motion.

## FACTUAL BACKGROUND

At all times relevant to the Second Amended Complaint, plaintiffs Emmanuel and

Martine Virgile resided at 1046 Thomas S. Boyland Street, Apartment 2F, Brooklyn, New York

11212, with Martine Virgile's two children, Fabienne Toussaint and S.L., a minor aged 12 at the

time.  (SAC[2] ¶¶ 12, 13, 26, 27).  The United States Marshals Service ("U.S. Marshals Service" or

"U.S. Marshals") maintained the New York/New Jersey Regional Fugitive Task Force ("NY/NJ

RFTF" or "Task Force") in Kings County, New York.  (Id. ¶¶ 19-21; see also Pls.' Mem.[3] at 2).

The Task Force operates pursuant to partnership agreements between the U.S. Marshals Service

and federal, state, and local agencies, assists in the apprehension of fugitives, and consists of

U.S. Marshals and deputized members of the New York City Police Department, Sheriff's

Office, Department of Corrections, and Kings County District Attorney's Office (the "City

officers").  (Pls.' Mem. at 2 (citing the U.S. Marshals' NY/NJ RFTF website)).

---

[1] Plaintiffs' proposed Second Amended Complaint also adds an allegation required by General Municipal Law § 50-i(1)(b).  (Pls.' Mem. at 12).  Given plaintiffs' assertion that they have otherwise complied with General Municipal Law § 50-i(1) (see id. at 12-13), and the lack of objections related to this proposed amendment, the Court grants plaintiffs' request to add this allegation without further analysis.  See, e.g., Razzano v. County of Nassau, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009) (granting plaintiff's motion to amend complaint to reflect that plaintiff filed a timely notice of claim pursuant to General Municipal Law §§ 50-e, 50-i, where defendants "received the timely notice to which they were entitled under the statute" and plaintiff's failure to "plead compliance with this requirement . . . [was] only a technical error").

[2] Citations to "SAC" refer to plaintiffs' proposed Second Amended Complaint, dated December 11, 2024 (ECF No. 25-1).

[3] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Leave to Amend the Complaint, filed December 13, 2024 (ECF No. 25-5).

At approximately 5:45 a.m. on September 30, 2022, plaintiffs allege that members of the Task Force banged on plaintiffs' door, yelling that they were looking for an individual. (SAC ¶ 28). While the Task Force shouted the name of the person they sought, plaintiffs allege that the person never visited or resided in plaintiffs' apartment, and they did not recognize the person despite being provided with a photo. (Id.) Nevertheless, plaintiffs allege that Task Force members forced their way into plaintiffs' apartment with guns drawn. (Id.) Plaintiffs also allege that they never consented to the officers' entry and the officers never produced an arrest warrant or search warrant authorizing their entry into plaintiffs' home. (Id. ¶ 29). Plaintiffs further assert that there were no exigent circumstances or other legal justifications that allowed the Task Force entry into plaintiffs' home without their consent or a valid warrant. (Id. ¶ 30). During entry, Task Force members also broke plaintiffs' front door; plaintiffs were later required to pay to repair the door, but the door still did not work properly as of late 2024. (Id. ¶ 36).

Plaintiffs allege that once the Task Force entered their apartment, they unlawfully detained and searched plaintiffs, preventing plaintiffs from "moving around their apartment freely." (Id. ¶ 32). Plaintiffs allege that a member of the Task Force pointed a gun at S.L.'s head, placing the 12-year-old in reasonable apprehension of bodily harm. (Id. ¶ 33). It is further alleged that other members of the Task Force grabbed Ms. Toussaint, opened her bathrobe, and frisked her while she was nude. (Id. ¶ 34). She did not consent to the unlawful touching and was placed in reasonable apprehension of bodily harm. (Id.) Ultimately, the Task Force searched plaintiffs' entire apartment and found nothing, including the fugitive they allegedly sought, and left without making any arrests. (Id. ¶ 35).

The Second Amended Complaint asserts claims of false imprisonment (Cause of Action I), trespass (Cause of Action II), assault and battery (Cause of Action III), negligent infliction of

emotional distress (Cause of Action VI), and loss of consortium (Cause of Action VII) against

the City and the United States pursuant to state law and the FTCA; a claim of negligent hiring,

training, retention, and supervision against the City (Cause of Action IV); and a claim of

intentional infliction of emotional distress against the United States pursuant to state law and the

FTCA (Cause of Action V).  (See SAC ¶¶ 39-85).

DISCUSSION

A.  Plaintiffs' Proposed Amendments

On October 24, 2024, after being added as a party defendant to plaintiffs' First Amended

Complaint, the United States produced certain sensitive documents revealing that some of the

law enforcement officers involved in the September 30, 2022 incident were employed by the

City and deputized by the Marshals.  (Pls.' Mem. at 2-3).

On November 8, 2024, plaintiffs shared the proposed Second Amended Complaint with

defendants, which adds the following allegations:  (1) NY/NJ RFTF members unlawfully entered

and searched plaintiffs' home (SAC ¶¶ 28-37); (2) certain NY/NJ RFTF members are law

enforcement officers employed by "the New York City Police Department, New York City

Sheriff's Office, New York City Department of Correction, and the Kings County District

Attorney's Office" (the "City officers") (id. ¶ 22); (3) the City recommended and assigned the

City officers to participate in the Task Force (id. ¶ 24); and (4) the City officers were acting

within the scope of both their federal and City employment (id. ¶¶ 23, 25).  The Second

Amended Complaint also adds claims that the City is vicariously liable for the City officers'

actions under the doctrine of *respondeat superior* for the claims of false imprisonment, trespass,

assault and battery, negligent infliction of emotional distress, and loss of consortium (Causes of

Action I, II, III, VI, VII), and that the City is liable for the negligent hiring, training, retention,

and supervision of the City officers (Cause of Action IV).

On January 10, 2025, the City filed its opposition, arguing that the proposed amendment

is futile because the deputized City officers were acting solely in the course of their federal

employment, and thus, the City cannot be held liable under the theory of *respondeat superior*

based on the officers' conduct. (City Opp.[4] at 1).

## B. Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend "its complaint

once as a matter of course within 21 days after serving the [original] complaint or within 21 days

after a responsive pleading has been served." Santagata v. Diaz, No. 17 CV 3053, 2019 WL

2164082, at *2 (E.D.N.Y. May 17, 2019); Blanchard v. Doe, No. 17 CV 6893, 2019 WL

2211079, at *3 (E.D.N.Y. May 22, 2019). After that, amendments are allowed "only with the

opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Rule 15 expresses a strong presumption in favor of allowing amendment, stating that

"[t]he court should freely give leave when justice so requires." Id. While courts have broad

discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that

an amendment should be denied only "'for good reason, including futility, bad faith, undue

delay, or undue prejudice to the opposing party.'" Bensch v. Estate of Umar, 2 F.4th 70, 81 (2d

Cir. 2021) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see

also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v.

Davis, 371 U.S. 178, 182 (1962)) (identifying "repeated failure to cure deficiencies by

amendments previously allowed" as an additional ground to deny a motion to amend). The party

opposing amendment, however, bears the burden of demonstrating good reason to deny the

---

[4] Citations to "City Opp." refer to defendant the City of New York's Memorandum of Law in Opposition to Plaintiff[s'] Motion for Leave to Amend the Complaint, filed on January 10, 2025 (ECF No. 27).

motion.  Speedfit LLC v. Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *3

(E.D.N.Y. Oct. 19, 2015); see also Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)

(citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)).

Courts may deny motions to amend where the proposed amendment would be futile as a

matter of law.  Such futility is established where the amendment "'would fail to cure prior

deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"

Thea v. Kleinhandler, 807 F.3d 492, 496-97 (2d Cir. 2015) (quoting IBEW Loc. Union No. 58

Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389

(2d Cir. 2015)); see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d

453, 459 (S.D.N.Y. 2012) (holding that "[a] proposal to amend a complaint is futile if the

proposed amended complaint would fail to state a claim upon which relief could be granted").

"[T]he standard for denying leave to amend based on futility is the same as the standard for

granting a motion to dismiss."  IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v.

Royal Bank of Scotland Grp., PLC, 783 F.3d at 389.  Accordingly, the Court must "consider 'the

proposed amendment[s] . . . along with the remainder of the complaint,' accept as true all non-

conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to

determine whether the allegations plausibly give rise to an entitlement of relief."  Panther

Partners, Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (quoting Starr v. Sony

BMG Music Ent., 592 F.3d 314, 323 n.3 (2d Cir. 2010), and citing Ashcroft v. Iqbal, 556 U.S.

662, 678-80 (2009)); see also Debrosse v. City of New York, No. 13 CV 3822, 2016 WL

3647589, at *2 (E.D.N.Y. May 25, 2016), report and recommendation adopted, 2016 WL

3647590 (E.D.N.Y. June 30, 2016).

When deciding a Rule 12(b)(6) motion to dismiss, courts consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is 'plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556); see also Hayden v. Paterson, 594 F.3d 150, 160-61 (2d Cir. 2010) (stating that the same standard guides the court's analysis of a Rule 12(c) motion).

Under this pleading standard, "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555) (internal quotation marks omitted). Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. However, the "plausibility standard" does not rise to the level of a "probability requirement[;]" instead, the standard requires "more than a sheer possibility that a defendant has acted unlawfully." Hayden v. Paterson, 594 F.3d at 161 (quoting Ashcroft v. Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

Thus, in deciding a motion to amend that is challenged on grounds of futility, the Court considers whether the newly added claims contain sufficient factual allegations to state a plausible claim for relief. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982)). Ultimately, when the well-pleaded facts do not permit a court to "infer more than the mere possibility of misconduct," a

7

plaintiff has only alleged, rather than shown, an entitlement to relief, and the federal pleading

standard has not been satisfied.  Ashcroft v. Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P.

8(a)(2)).

    C.  Liability for Federally Deputized Task Force Officers

       Pursuant to 28 U.S.C. § 566(e)(1)(B), the U.S. Marshals Service is authorized to

"investigate such fugitive matters . . . as directed by the Attorney General," and Congress has

directed the Attorney General to "establish permanent Fugitive Apprehension Task Forces

consisting of . . . local law enforcement authorities . . . to be directed and coordinated by the

[U.S.] Marshals Service, for the purpose of locating and apprehending fugitives." Escobar v.

Correa, No. 22 CV 8434, 2024 WL 4042122, at *7 (S.D.N.Y. Sept. 4, 2024) (citing 34 U.S.C. §

41503(a)).  The Director of the U.S. Marshals is authorized to deputize "federal, state, or local

law enforcement officers whenever the law enforcement needs of the U.S. Marshals Service so

require."  28 C.F.R. § 0.112(b).

       Quoting Escobar, the City argues that these task forces "'plainly derive their authority

from federal, not state law,'" (City Opp. at 4 (quoting Escobar v. Correa, 2024 WL 4042122 at

*7)), and thus, courts have dismissed claims against local government entities "based on the

actions of deputized officers who were certified to have been acting within the scope of their

federal employment." (Id. (citing cases)).  Specifically, the City relies on Bordeaux v. Lynch,

where the Northern District of New York dismissed federal unlawful search and seizure claims

against local government entities that employed the deputized defendants, finding that the

officers were acting within the scope of their federal employment, and thus, the municipal

defendants were not amenable to suit under Section 1983.  See 958 F. Supp. 77, 84 (N.D.N.Y.

1997); see also Stout v. United States, No. 15 CV 379, 2016 WL 4083500, at *3 (W.D. Okla.

Aug. 1, 2016); No. 14 CV 427, 2016 WL 4083496, at *2 (W.D. Okla. Aug. 1, 2016) (dismissing state tort claims against the city defendant based on the actions of deputized city officers "because the individual local law enforcement officers were all acting as federal employees at the time of the incident, [and thus] any alleged negligent conduct is attributable to the federal government").

In this case, plaintiffs argue that the determination as to whether the City officers were acting within the scope of both their federal and City employment depends upon whether the City maintained any control over the deputized City officers. (Pls.' Reply[5] at 1). Plaintiffs contend that Bordeaux is distinguishable from this case because in Bordeaux, the Attorney General certified that the municipal officers were acting within the scope of their federal employment and acting under the color of federal law, not state law. (Id. at 1 (citing Bordeaux v. Lynch, 958 F. Supp. at 84)). In Stout, the Attorney General similarly certified that the municipal officers were acting within the scope of their federal employment, but although the plaintiff had an opportunity to challenge the certification, the court found that the plaintiff failed to produce facts rebutting that certification. (Id. at 2 (citing Stout v. United States, 2016 WL 4083500 at *3)). Furthermore, plaintiffs argue that the court's holding in Stout misconstrued 28 U.S.C. § 2679(d)(2), because when an employee is certified as acting within the scope of their federal employment, the provision does not provide that "the United States must be the sole defendant on the state law claims, or that other parties may not be held liable in tort" for the employee's actions. (Id. at 2-3).

Instead, plaintiffs rely on Guzman v. United States, No. 11 CV 5834, 2013 WL 543343

---

[5] Citations to "Pls.' Reply" refer to plaintiffs' Memorandum of Law in Reply to the City's Opposition to Plaintiffs' Motion to Amend the Complaint, filed January 17, 2025 (ECF No. 28).

(S.D.N.Y. Feb. 14, 2013), and its companion case in the New York Court of Claims.[6]  (Pls.'

Reply at 3).  In those cases, the courts independently determined that although the parties

conceded that the local government officers were acting as federal employees, it would be

premature to dismiss the state law claims where no discovery had occurred, and it was unclear

whether the municipalities maintained any control over the municipal employees assigned to the

federal agency.  (See id. (citing Guzman v. United States, 2013 WL 543343 at *9-10)).

To the extent that the City has argued that the NJ/NY RFTF members were not acting

within the scope of their City employment because 34 U.S.C. § 41503 provides that the Task

Force is to "be directed and coordinated" by the U.S. Marshals (City Opp. at 5-6), plaintiffs

argue that this provision does not foreclose the possibility that the City maintained a level of

control over its municipal officers.  (Pls.' Reply at 4).  Rather, plaintiffs point to Pettiford v. City

of Greensboro, also cited by the City, where the court declined to dismiss the case against the

municipality after applying multiple evidence-based frameworks articulated by other courts to

"determine whether a local law enforcement officer or official may be deemed a federal agent for

purposes of tort liability:  (1) statutory cross-deputation; (2) totality of the circumstances; (3)

borrowed servant doctrine; and (4) government contractor defense."  556 F. Supp. 2d 512, 534

(M.D.N.C. 2008).

It does not appear that pursuant to the Westfall Act, the Attorney General[7] has certified

that the City officers were acting within the scope of their federal employment during the alleged

incident, and there has been no discovery so far as to whether the City maintained any control

---

[6] The New York Court of Claims case, Guzman v. State of New York, Claim No. 120325 (N.Y. Ct. Cl. Nov. 5, 2012), is attached as an exhibit to plaintiffs' motion to amend.  (See ECF No. 25-3).

[7] The Court notes that the United States has not filed any papers in connection with plaintiffs' motion to amend and has not contested plaintiffs' claim that no such certification has been made at this time.  (See Pls.' Mem. at 2).

over the City officers such that the City could be held liable in tort under state law.  Given these circumstances, it is premature for the Court to determine that there is no scenario in which the City might be held liable for the conduct of these City officers, and thus, that the claims against the City should be dismissed.  Although the City argues that plaintiffs have conceded that the City officers were deputized and that the Task Force was directed and coordinated by the U.S. Marshals, the City has failed to articulate any reason why, apart from this disputed issue of futility, the amendment should not be granted at this time.  If the Attorney General certifies that the City officers were acting within the scope of their federal employment, and discovery reveals that the City maintained no control whatsoever over these deputized officers that would permit liability against the City for state tort claims, then the City may move to dismiss the claims against it.

Accordingly, the Court grants plaintiffs' motion to amend.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
     April 30, 2025                   /s/ Cheryl L. Pollak
                                         Cheryl L. Pollak
                                         United States Magistrate Judge
                                         Eastern District of New York